## Commonwealth v. Emrick

*M. Luther Harter, Jr.,* for Commonwealth.
*Sanford S. Marateck,* for defendant.

TROUTMAN, J., July 28, 1952.—Wilbur E. Emrick, a resident of the Township of Ralpho, Northumberland County, Pa., while operating a motor vehicle on a public highway known as United States Routes 11-15 between Duncannon and Marysville, Perry County, Pa., at about 8:10 o'clock p.m. on September 8, 1951, was apprehended by a member of the Pennsylvania State Police. The police officer filed an information before a justice of the peace in Penn Township, Perry County, Pa., charging Emrick with the violation of section 1002, subsec. (a), of The Vehicle Code of May 1, 1929, P. L. 905, which resulted in the imposition of a fine and costs which were paid by Emrick on October 1, 1951.

On November 28, 1951, the Bureau of Highway Safety, Department of Revenue, Commonwealth of Pennsylvania, caused a letter to be sent to defendant in which it was stated, inter alia, that as a result of

defendant's arrest and conviction for violating the speed laws, his operating privileges would be suspended for a period of 90 days; that before his privileges would be formally suspended he would have the right to submit testimony in his defense by either notifying the department that he wished to testify personally at a departmental hearing or by sending an "Operator's Statement of Defense" in lieu of his personal testimony, thus waiving a departmental hearing; and that his failure to notify the department within 10 days of his choice of defense, would be considered as a waiver of his hearing.

In response to this notification, on December 5, 1951, defendant through his attorney requested a hearing. Under date of December 7, 1951, counsel for defendant received a letter from the Bureau of Highway Safety stating that arrangements would be made for a hearing in accordance with his request. On January 11, 1952, the Director of Highway Safety notified defendant's counsel that a hearing was scheduled in City Hall, Shamokin, Pa., on January 29, 1952. On January 22, 1952, counsel for defendant addressed a letter to the Director of Highway Safety informing him that defendant, who is a student at Lehigh University, Bethlehem, Pa., began his mid-semester examinations on January 28, 1952, that it was impossible for him to be excused for the hearing scheduled January 29, 1952, and that a request was made for a continuance of the hearing. On January 28, 1952, the Bureau of Highway Safety informed counsel for defendant, by letter, that it was very inconvenient to postpone the hearing in defendant's case and further stated that inasmuch as in all cases of speeding a 90-day suspension is enforced, with or without a hearing, if defendant cannot appear on January 29th, he should fill in forms which were attached to the letter and return them to the department.

On April 1, 1952, defendant was notified that his operating privileges were suspended for a period of 90 days commencing April 1, 1952, the reason for withdrawal being driving too fast for conditions. Underneath the reason for withdrawal there appears the following: "Failure to appear for a hearing 1/29/52." On April 14, 1952, Emrick presented his petition to this court for an appeal from the action of the Secretary of Revenue in suspending his operating privileges. The appeal was allowed and the court directed that it act as a supersedeas. A hearing de novo was had before this court on this appeal on June 23, 1952, at which time testimony in behalf of the Commonwealth and defendant was heard.

At this hearing the arresting officer, Harris J. Baysore, a member of the Pennsylvania State Police, testified that he, on September 8, 1951, at about 8:10 o'clock p. m., was patrolling United States Routes 11-15, south of Duncannon, between Duncannon and Marysville in an unlettered Chevrolet sedan. The officer parked his automobile along the State highway and while so parked, observed the automobile driven by defendant proceeding along the highway in a southwardly direction. The officer followed defendant's car and after following the same for about a mile and a half, clocked defendant's car for speed for a distance of one mile at a speed of 65 miles per hour. The area through which defendant's car was clocked is a restricted speed zone, in which there are erected 35-mile speed limit signs. The officer stopped defendant, secured information for the purpose of making an arrest, notified defendant as to the speed at which he was traveling and informed him that he would receive a summons from a justice of the peace as to his speed.

The alleged violation occurred in the Village of Perdix, which is more or less a residential area. The highway, where the offense occurred, is of concrete

construction consisting of two traffic lanes. The roadway is more or less straight, consisting of a few curves and some slight grade. At the time defendant was apprehended, the weather was clear, the roadway dry and it was just about dusk. According to the testimony of the officer, the traffic on the highway was not heavy. Defendant testified that the traffic was very light, that from Duncannon to the point where he was stopped, there were no other cars traveling in his direction.

The officer testified that the car which was used in making the arrest had been inspected for speedometer accuracy within a period of 30 days from the date of the arrest and in support thereof presented a certificate of speedometer accuracy issued by Paul Ridinger of Harrisburg, Pa., showing that the speedometer had been tested and found accurate on September 7, 1951. This certificate was admitted into evidence.

Defendant testified that he was operating a Packard sedan on September 8, 1951, in a southwardly direction on United States Route 11 between Amity Hall and Perdix. His car was in good operating condition. The traffic conditions were very light and the roadway was straight to the immediate point where he had been stopped by the officer. He had not been looking at his speedometer and had no idea of just how fast he was operating his vehicle.

The reason given by the Department of Revenue for the suspension of defendant's license was that he was driving too fast for conditions. According to the police officer, he was charged with the violation of section 1002 (a) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §501. That section provides:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of

the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

The operator of a motor vehicle who drives his car at a speed which is unreasonable and improper and without due regard to the traffic, surface and width of the highway violates the provisions of the foregoing section. In Commonwealth v. Klick, 164 Pa. Superior Ct. 449, 452, it was held that section 1002 (a) of the act creates a complete offense separate and distinct from every other offense defined elsewhere in the act. Official signs as to permissible maximum speed cannot relieve one from a violation of section 1002 (a) merely by driving within the speed limit prescribed. While care and prudence may indicate a rate of speed much less than the maximum limit, as indicated by official signs, conceivably one may drive so slowly under certain conditions as to jeopardize others by his disregard for their safety; on the other hand one may exceed permissible maximum speed limits on occasion, in the operation of a motor vehicle and still not be chargeable with violation of section 1002 (a).

While the testimony shows that there were signs erected along the highway restricting the speed limit to 35 miles per hour and while the testimony shows that defendant was operating his vehicle at the rate of 65 miles per hour, there is absolutely no evidence whatsoever to indicate that defendant was driving his vehicle without due regard to the traffic, surface and width of the highway. Certainly there is no testimony to indicate that defendant operated his motor vehicle at such a speed as to endanger the life, limb or property of any person. The testimony of the Commonwealth

is limited to a showing that a police officer clocked defendant's motor vehicle for a distance of one mile at a speed of 65 miles per hour within a speed zone where the maximum speed allowed was 35 miles an hour and that the speedometer in the car used by the officer in making the check had been tested for speedometer accuracy within a period of 30 days from the date of the offense. There was no attempt upon the part of the Commonwealth to show that defendant drove his automobile without regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing.

This highway is a well constructed concrete road, 20 feet in width, and according to the testimony of defendant was practically straight until the point at which he was stopped. The traffic was extremely light, defendant testifying that there was no cars going in the same direction as he was in the entire distance between Duncannon and Perdix. There is nothing in the record to indicate that any other traffic was jeopardized by defendant's driving on this occasion or that the highway through the Village of Perdix was occupied by any other traffic whatsoever whether vehicular or pedestrians.

The only conclusion that can be drawn from the testimony of the Commonwealth is that defendant was driving his vehicle at a rate of speed in excess of that permitted in the restricted zone. Had the defendant been charged with exceeding the speed limit, the prosecution would not have prevailed because under the provisions of section 1002 (d) of The Vehicle Code, 75 PS §501, it is provided that when the rate of speed of any vehicle is timed on any highway within a business or residence district, where official speed limit signs are erected for the purpose of ascertaining whether or not the operator of such vehicle is violating a speed provision of this act, such time shall be taken by not less

than two peace officers, one of whom shall have been stationed at each end of a measured stretch, and no conviction shall be had upon the unsupported evidence of one peace officer.

Defendant has never been previously arrested for violating the motor vehicle laws. He has been driving an automobile for over four years and covers a considerable amount of mileage each year. He is working for a construction company, which has projects in different parts of the State and in the performance of his duties, it is essential that he have an operator's license.

Considering the fact that the testimony on the part of the Commonwealth introduced for the purpose of showing that defendant was driving too fast for conditions is extremely inconclusive and the fact that this defendant has an excellent driving record and needs his operating privileges for the conduct of his business, we conclude that the suspension of defendant's operating privileges is not merited under the circumstances of this case.

In respect to defendant's failure to appear at a hearing before a department examiner, this court has already passed upon that particular question in the case of Commonwealth v. Puppo, 63 D. & C. 533. However, we are of the opinion that it would be useless to return this case for the purpose of a hearing before a representative of the department in light of the conclusion which we have reached. Even though defendant did request a hearing, the department's letter of November 28, 1951, clearly indicates that defendant's operating privileges would be suspended for a period of 90 days regardless of whether he had a hearing or not, for the letter specifically states that before his privileges are formally suspended he would have a right to submit a defense. Considering the fact that he could have waived a hearing entirely in

this case, the fact that he did not appear for a hearing after he had requested the department to continue the same because of his college examinations, should certainly not mitigate against defendant in this case.

Defendant's appeal must be sustained and the suspension of his operating privileges vacated.

*Order*

And now, to wit, July 28, 1952, the appeal of Wilbur E. Emrick from the order of the Secretary of Revenue of the Commonwealth of Pennsylvania suspending his operator's license for a period of 90 days is hereby sustained and the action of the Secretary of Revenue in suspending his operating privileges for a period of 90 days is hereby vacated. Costs to be paid by appellant.